UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ISAAC CONCEY,

                  Plaintiff,

      -against-

NEW YORK STATE UNIFIED COURT
SYSTEM, OFFICE OF COURT
ADMINISTRATION, and MARGARET
BEIRNE, in her individual and official
capacity,

                  Defendants.

**MEMORANDUM OPINION
& ORDER**

08 Civ. 8858 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Isaac Concey alleges that the New York State Unified Court System,

Office of Court Administration ("OCA"), and Margaret Beirne, the Principal Librarian of the

Bronx Supreme Court Library, violated his rights under Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000(e) et seq. (as amended), 42 U.S.C. §§ 1981 and 1983; New York State

Executive Law § 296, intentionally inflicted emotional distress, and breached implied promises

in his employment contract.[1]  (Am. Cmplt. ¶ 1)  Plaintiff alleges that Defendants "purposefully

and intentionally discriminated against him based upon his race, color, and national origin and in

retaliation for having opposed discriminatory practices."  (Am. Cmplt. ¶ 3)

---

[1]  Plaintiff has withdrawn his (1) Section 1983 claim against OCA; (2) his Title VII claim against
Beirne; and (3) his breach of implied contract claim against OCA.  (Pltf. Br. 9, 25)  Accordingly,
Defendants will be granted summary judgment on those claims.

Plaintiff also cites Title VI, 42 U.S.C. § 2000(d) in the preliminary statement of his Amended
Complaint, but he does not plead a Title VI violation in the body of the Amended Complaint, nor
does he state a Title VI cause of action.  Accordingly, there is no Title VI claim in this case.

On October 27, 2009, Defendants moved for summary judgment on all of Plaintiff's claims, arguing:  (1) that Plaintiff had failed to exhaust his administrative remedies; (2) that Plaintiff's Section 1981 and 1983 claims must be dismissed; (3) that certain of Plaintiff's claims are time-barred, because they were not raised in his New York State Division of Human Rights complaint; and (4) that, in any event, Plaintiff has failed to establish a <u>prima</u> <u>facie</u> case of unlawful discrimination, failure to promote, hostile work environment, or retaliation.  (Docket No. 35)  For the reasons stated below, Defendants' motion for summary judgment will be granted in part and denied in part.

## **BACKGROUND**

Plaintiff is a Ghanaian-born United States citizen.[2]  (Pltf. Rule 56.1 Stmt. ¶¶ 1-2) He has Master's Degrees in Information Science and Public Administration and has more than twenty years of experience working in libraries.  (<u>Id.</u> ¶¶ 109-111)  For twelve years prior to working for OCA, he worked for the Queens Public Library, including as senior librarian and branch manager.  (<u>Id.</u> ¶111)

---

[2]  To the extent that this Court relies on facts drawn from a party's Local Rule 56.1 statement, it has done so because that party's adversary has not disputed those facts or has not done so with citations to admissible evidence.  Where Plaintiff disagrees with Defendants' characterization of the cited evidence, and has presented an evidentiary basis for doing so, the Court relies on Plaintiff's characterization of the evidence.  <u>See</u> <u>Cifra v. Gen. Elec. Co.</u>, 252 F.3d 205, 216 (2d Cir. 2001) (court must draw all rational factual inferences in non-movant's favor in deciding summary judgment motion).  Plaintiff cannot, however, rely on inadmissible hearsay to defeat summary judgment.  <u>See</u> Fed. R. Civ. P. 56(e)(1) (stating that affidavit opposing summary judgment "must be made on personal knowledge, set[ting] out facts that would be admissible in evidence"); <u>Feingold v. New York</u>, 366 F.3d 138, 155 n.17 (2d Cir. 2004) ("In reviewing the district court's grant of summary judgment, . . . we may only consider admissible testimony."); <u>see also</u> <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 222 (2d Cir. 2004) (finding that hearsay evidence regarding another person's tolerance for racial behavior was "not competent evidence in opposition to summary judgment").

On August 16, 2001, OCA hired Plaintiff as a law librarian in the Bronx Supreme Court Law Library.  (Def. Rule 56.1 Stmt. ¶¶ 1-2; Pltf. Rule 56.1 Counter-Stmt. ¶ 112)  He worked in a probationary capacity until May 2005, when he received a permanent appointment as the result of passing a civil service exam.  (Def. Rule 56.1 Stmt. ¶ 1; Pltf. Rule 56.1 Counter-Stmt. ¶¶ 115-17)  As a law librarian, Plaintiff's duties included processing requests for books and other library materials, conducting public service reference work, and shelving, carrying, and moving books.  (Pltf. Rule 56.1 Stmt. ¶ 113)  He remains employed by the OCA in this capacity and was most recently assigned to the Bronx County Hall of Justice Library.  (Pltf. Rule 56.1 Counter-Stmt. ¶ 108; Stadtmauer Dep. at 23)

In 2005, Plaintiff applied and was interviewed for the Principal Law Librarian position at the Bronx Supreme Court.  (Pltf. Rule 56.1 Counter-Stmt. ¶ 118)  Plaintiff reports being told by Administrative Judge Stadtmauer that he was "too new" for the position, although Judge Stadtmauer does not recall making this statement.  (Id. ¶ 119; Stadtmauer Dep. at 11)

In February 2005, the OCA interview panel hired Defendant Margaret Beirne – a white female – for the Principal Law Librarian position, and she became Plaintiff's immediate supervisor.  (Def. Rule 56.1 Stmt. ¶ 3)  Plaintiff and Beirne had a difficult relationship from the outset, and their negative interactions account for most of Plaintiff's factual allegations.  (Pltf. Rule 56.1 Counter-Stmt. ¶ 121)

In his Local Rule 56.1 Counter-Statement of Facts, Plaintiff recites dozens of discrete acts as the basis for his various discrimination claims.  They are listed below in rough chronological order.  Where Plaintiff provides no date for an incident, it is listed in the order

Plaintiff presents the incident.  Each event is presented with the level of detail supported by the

evidence[3]:

- On one occasion, after Plaintiff had consolidated shelving space in the library, he complained of pains in his side.  Beirne told him, "It serves you right," and said that Plaintiff should have waited for her to assist him.  (Pltf. Rule 56.1 Counter-Stmt. ¶ 124)

- Beirne once told Plaintiff that he was "stubborn" for not waiting to prepare and distribute two books to the Self-Representation Department.  (Id. ¶ 125)

- While Beirne was preparing pocket parts in her office one day, she asked Plaintiff: "Isaac, why did you move the books?"  (Id. ¶ 126)  Plaintiff did not know what she was referring to.  (Id. ¶ 127)

- In August 2005, Defendant Beirne told Plaintiff not to use the microfiche room for his lunch breaks, which was his custom.  (Id. ¶¶ 128-32; Pltf. Dep. at 54-57)  When Plaintiff asked why he could no longer use the room for his lunch break, Beirne stated, "Boy, you don't have to use the microfiche room.  It is for Ms. Flemming, the court officer."  (Pltf. Rule 56.1 Counter-Stmt. ¶ 131)  Flemming is a white court officer, not on the library's staff.  (Id.; Pltf. Dep. at 65-66)

- Beirne referred to Plaintiff as "Boy" on two other occasions (Pltf. Rule 56.1 Counter-Stmt. ¶ 134):  (1) during a transit strike when Defendant Beirne asked Plaintiff's coworker Gail Anderson, "Where are the Boys?"  (Id. ¶ 136), and (2) in December 2005, when Plaintiff returned to work after taking sick time, and approached Beirne to report his return.  At that time she stated, "I hear you, boy."  (Id. ¶ 138)

- Before the end of 2005, Plaintiff complained to the head of Human Resources about Beirne's attitude toward him.  (Id. ¶ 139)

- In January 2006, Plaintiff received a "canvassing letter" inquiring whether he was interested in applying for the Senior Law Librarian position at the Bronx Law Library.  Plaintiff responded to the letter, expressing interest in the position, but was never contacted about it.  (Id. ¶ 160)

- On January 26, 2006, Plaintiff went to the mail room before 9:30 a.m. to retrieve the mail before the library opened to the public.  Upon his return to the library, Beirne

---

[3]  As Defendants note in their Response to Plaintiff's Counter-Statement of Facts, Defendant Beirne either does not recall or disputes making many of the statements Plaintiff attributes to her. (See, e.g., Def. Rule 56.1 Resp. ¶¶ 131, 134-136)  For purposes of ruling on Defendants' motion, the Court assumes that Beirne made all of the statements attributed to her.

said to Plaintiff:  "Isaac, you don't listen.  Why did you leave the library?  I'm trying to run a library and public service is important.  There is something about management that you don't get.  You said you were a good manager where you came from."  (<u>Id.</u> ¶ 140-41)

- On January 26, 2006, Plaintiff told Chief Clerk Steven that "Ms. Beirne is antagonizing [me] by saying disparaging remarks."  (<u>Id.</u> ¶ 143)

- On February 7, 2006, during a meeting with "two chief clerks and Ms. Anderson," Plaintiff said to Beirne that he "wasn't a small boy for her to disparage []any time she liked."  (<u>Id.</u> ¶ 144)  In this meeting, Plaintiff asked "How many black[s] do you see in the systems having . . .  you[r] position or senior law librarian?"  (<u>Id.</u> ¶ 146)

- After this meeting, Beirne told Plaintiff he was "lucky to have a job."  (<u>Id.</u> ¶ 179)

- In late February 2006, Beirne submitted a performance evaluation of Plaintiff that Plaintiff alleges was inaccurate and "haphazardly done."  (<u>Id.</u> ¶ 147)  Beirne gave Plaintiff an "unsatisfactory" rating for General Responsibility category 6:  "Produces work with a low frequency of errors.  Work is neat and legible."  She gave him a "needs improvement" rating for numerous professionalism categories including Professionalism #3:  "Is respectful and courteous towards supervisors, co-workers and subordinates."  (<u>Id.</u> ¶¶ 148, 150; Brewington Decl., Ex. S)  For Time and Leave category 2, "Understands and follows procedures for using leave accruals," Beirne rated Plaintiff as "needs improvement."  (Brewington Decl., Ex. S)  Beirne rated Plaintiff's overall job performance as "Meets Job Requirements," however.  (Def. Rule 56.1 Stmt. ¶ 91)

- When Plaintiff received his performance evaluation from Beirne, he signed it "under protest" and submitted objections to the evaluation.  (Pltf. Rule 56.1 Counter-Stmt. ¶ 152; Brewington Decl., Ex. T)

- After Plaintiff submitted his objections, Beirne attached a Post-Interview Addendum to her evaluation stating that during her performance evaluation interview with Plaintiff, he acted in a "disturbing manner . . . grasp[ing] his gonads . . . strok[ing] and prob[ing] his gonads towards [her]."  (Pltf. Rule 56.1 Counter-Stmt. ¶ 153)

- On May 8, 2006, Plaintiff wrote an email to the Chief Clerk of the Criminal Division disputing the accusations in Beirne's Post-Interview Addendum and stating that he believed the accusations were part of a "diabolical plan" to "continu[ally] . . . create a toxic and hostile work environment.  It has been an unfortunate pattern of harassment . . . through casting aspersions, innuendos, intimidation, threats, and unwarranted verbal abuse."  (<u>Id.</u> ¶ 154; Brewington Decl., Ex. H)

- On October 5, 2006, Deputy Chief Administrative Judge Joan Carey informed Bronx Criminal Division Administrative Judge John P. Collins that "[t]he claims brought by

5

Principal Law Librarian Margaret Beirne . . . alleging that [Mr. Concey] inappropriately touched himself during a meeting . . . have been reviewed and investigated by the Unified Court System's Office of the Managing Inspector General for Bias Matters, . . . [and she] concur[red] in the determination that the claims were unsubstantiated." (Pltf. Rule 56.1 Counter-Stmt. ¶ 156; Brewington Decl., Ex. B)

- On March 31, 2006, Plaintiff filed a complaint with the chief clerks regarding Beirne's behavior towards him in the workplace. (Pltf. Rule 56.1 Counter-Stmt. ¶ 182) Plaintiff complained that Beirne denied him access to one of the library phone lines. (Id. ¶ 183) Plaintiff stated: "I . . . entreat you again to conduct adequate investigation. . . . [T]his is no threat to the Administration but a genuine request to de-escalate this hostile working environment in the law library." (Id. ¶ 184) Plaintiff complains that he and his African-American co-worker – Gail Anderson – were denied access to the library phone lines, while Beirne and "Mr. Franklin" – a white court attorney not on the library staff – had such access. (Id. ¶¶ 185-86; Am. Cmplt. ¶ 73)

- On March 16, 2006, Plaintiff alleges that he was delivering books to a judge's chambers and the judge's secretary asked him "if [he] had brought them X-rated books." (Pltf. Rule 56.1 Counter-Stmt. ¶ 157)

- Plaintiff also claims that Court Officer Flemming told him: "Isaac, I just want you to know that I said favorable things when they called me down there. I told them you are very disciplined and a gentleman, that I don't think you would do such vulgar things as Ms. Beirne is alleging." (Id. ¶ 158)

- Plaintiff also applied for the Senior Law Librarian position in Utica, New York, but was not selected. (Id. ¶ 163; Pltf. Dep. at 237)

- Also in 2006, Plaintiff alleges that Beirne locked him and Ms. Anderson out of the office where they hang their coats and access ready-reference material for the public. (Pltf. Rule 56.1 Counter-Stmt. ¶ 172 (quoting Plaintiff's SDHR Cmplt., Brewington Decl. Ex. A))

- On June 4, 2006, Plaintiff requested a shorter lunch break so that he could leave work early to attend a medical appointment. He claims that Beirne retorted, "Do you want a favor? You want a favor from me when you sneak behind me to take an early lunch?" (Id. ¶175)

- Plaintiff testified that Beirne mimicked his accent on at least one occasion. (Id. ¶ 178)

- The OCA Employee Handbook states: "Generally, positions in the competitive class above entry level are filled by the promotion of individuals holding related, lower-graded competitive class positions for a specified period of time (usually one or two

6

years).” (Brewington Decl., Ex. I at 7)  The Handbook goes on to explain: “Every applicant who passes a competitive examination and meets the prescribed qualifications for the position is placed on an eligible list in rank order according to his/her final rating, adjusted by veterans’ or seniority credits, if applicable.  All eligible people with the same final score are equally ‘reachable’ on the list for appointments.”  (Id. at 8)

- On March 29, 2007, Plaintiff complained to Clerk Steven Clark and Judge Stadtmauer that he had not yet been promoted to a Senior Law Librarian position despite the fact that other “[l]aw librarians in other jurisdictions who even scored far lower and thus rank far lower [than Plaintiff] have the positions . . . and are about to get a second salary increase.” (Pltf. Rule 56.1 Counter-Stmt. ¶ 187)

- On January 9, 2008, Plaintiff received an “Availability Inquiry” for Senior Law Librarian positions at the Civil Court of the City of New York and the Surrogate’s Court in New York County.  Plaintiff was interviewed for both positions.  (Id. ¶¶ 188-90)

- On April 4, 2007, Beirne told Plaintiff not to allow members of the public into her office.  (Id. ¶ 191)  Plaintiff denied ever having done this, and on April 6, 2007, he requested that Judge Stadtmauer “advise [Beirne to] cease and desist from harassing [him] through false allegations.”  (Id. ¶¶ 192-93)

- On December 3, 2007, Beirne drafted a memorandum advising Plaintiff and Ms. Anderson that she had become aware of inaccurate bar code entries made at the Bronx Law Library and stating, in part, “Since both of you are responsible for cataloging, it is clear that you have not been following proper procedure.”  (Id. ¶¶ 194-95)  Plaintiff claims that Beirne does not understand the bar code system.  (Id. ¶ 196)

- On one occasion, an unknown individual referred to Plaintiff as, “This Tom.”  (Id. ¶¶ 198-99)

- In 2008, a friend of Beirne asked her, “Has Al Sharpton been here yet?  Is the Bronx quiet now?”  At about the same time, an OCA employee and a court attorney for one of the judges said to Beirne, “maybe we should bring Al Sharpton.”  (Id. ¶¶ 200-01)

- On February 24, 2009, Defendant Beirne had trouble gaining access to a certain computer.  Beirne said to Plaintiff, “what have you done to it?  To the computer?” and “what did you load on the computer?”  (Pltf. Rule 56.1 Counter-Stmt. ¶ 168)

- On March 29, 2009, Beirne asked Plaintiff and Anderson not to access the library workroom through her office, but to instead step out of the library and re-enter the workroom via a stairwell area outside the library.  (Id.)  Plaintiff maintains that white

staff – not supervised by Beirne – are permitted to enter the library workroom through Beirne's office.  (Id. ¶ 169)

On May 10, 2006, Plaintiff filed a discrimination complaint with the New York State Division of Human Rights ("SDHR"), charging OCA with discrimination on the basis of "race/color, national origin."  (Id. ¶ 171; Brewington Decl., Ex. A)  The charge was cross-filed with the EEOC.  (See Brewington Decl., Ex. A at 2)

In his SDHR complaint, Plaintiff alleged that:

(1) Beirne "has made inaccurate and derogatory remarks about my performance and professionalism which culminated in a biased and inaccurate performance review of February 23, 2006," including "remarks about my alleged going to lunch early, my alleged illegible handwriting, my alleged rudeness to Ms. Gail Anderson, of Black American-Indian origin, a co-worker, and my alleged abuse of sick time";

(2) "Ms. Beirne mistreated Gail Anderson by giving her a negative performance evaluation";

(3) Ms. Beirne locked Ms. Anderson and I out of office where we hang up our coats and access ready-reference material for the public";

(4) "Ms. Beirne disconnected phone extensions for myself and Ms. Anderson while keeping an extension for her friend, Ray Franklin, Esq., who is not on the library staff"; and

(5) "Ms. Beirne falsely accused me in writing of sexually abusing her during the performance evaluation conference and attached it to my performance evaluation."

(Brewington Decl., Ex. A at 1-2)  Plaintiff's SDHR was dismissed for administrative convenience, without a determination of the merits of his allegations.  (Pltf. Dep. at 268)

## DISCUSSION

Summary judgment is appropriate only when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

8

56(c).  Whether facts are material is a determination made by looking to substantive law.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Whether "[a] dispute about a

genuine issue exists" depends on whether "the evidence is such that a reasonable jury could

decide in the non-movant's favor."  Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.

2008) (internal quotation marks omitted).  Courts "resolve all ambiguities, and credit all factual

inferences that could rationally be drawn, in favor of the party opposing summary judgment."

Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).

      "In moving for summary judgment against a party who will bear the ultimate

burden of proof at trial," as in the instant case, "the movant may satisfy this burden by pointing

to an absence of evidence to support an essential element of the nonmoving party's claim."

Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996) (citing Celotex Corp. v. Catrett,

477 U.S. 317, 322-23 (1986)).  The non-movant "cannot avoid summary judgment simply by

asserting a 'metaphysical doubt as to the material facts,'" Woodman v. WWOR-TV, Inc., 411

F.3d 69, 75 (2d Cir. 2005) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 586 (1986)), and "may not rely on mere conclusory allegations nor speculation, but instead

must offer some hard evidence showing that [his] version of the events is not wholly fanciful."

Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (quoting D'Amico v. City of

New York, 132 F.3d 145, 149 (2d Cir. 1998)).  See also Holcomb v. Iona College, 521 F.3d 130,

137 (2d Cir. 2008) ("Even in the discrimination context . . . a plaintiff must provide more than

conclusory allegations to resist a motion for summary judgment."); Meiri v. Dacon, 759 F.2d

989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering

purely conclusory allegations of discrimination, absent any concrete particulars, would

necessitate a trial in all Title VII cases.").

9

District courts must be cautious in granting summary judgment in employment discrimination cases, however, because "the ultimate issue to be resolved in such cases is the employer's intent, an issue not particularly suited to summary adjudication." Eastmer v. Williamsville Cent. Sch. Dist., 977 F. Supp. 207, 212 (W.D.N.Y. 1997) (citing Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994)).  Nevertheless, it "is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." Abdu-Brisson v. Delta Airlines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) ("the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to . . . other areas of litigation") (internal quotation marks omitted).

The Court must take a "totality of the circumstances" approach and look to "the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff,'" Schnabel v. Abramson, 232 F.3d 83, 88 (2d Cir. 2000) (quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000)), including "not only reported acts of harassment committed against a plaintiff, but also unreported incidents of harassment." Tepperwien v. Entergy Nuclear Operations, Inc., 606 F. Supp. 2d 427, 437 (S.D.N.Y. 2009) (citing Distasio v. Perkin Elmer Corp., 157 F.3d 55, 62 (2d Cir. 1998) ("[T]he fact that the incidents were or were not reported is irrelevant to a determination of whether or not a hostile environment existed.")).  The Court may also consider the treatment of a plaintiff's co-workers. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) ("[A] plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support her claim.");

Schwapp v. Town of Avon, 118 F.3d 106, 111-12 (2d Cir. 1997) (plaintiff's second-hand

knowledge of racially derogatory comments or jokes can impact work environment).

## I.   PLAINTIFF'S SECTION 1981, SECTION 1983, AND STATE LAW CLAIMS AGAINST OCA AND BEIRNE IN HER OFFICIAL CAPACITY ARE BARRED BY THE ELEVENTH AMENDMENT

"Because the state has not waived its Eleventh Amendment immunity to claims

brought under § 1981, § 1983 [or the New York State Human Rights Law,] these claims will be

dismissed and the Court need not reach their merits." [4]   Koumantaros v. City Univ. of New York,

No. 03 Civ. 10170(GEL), 2007 WL 840115, at *4 (S.D.N.Y. Mar. 19, 2007) (granting

defendant's motion for summary judgment); see also Will v. Michigan Dept. of State Police, 491

U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are

'persons' under § 1983.").   "The Eleventh Amendment bars suits, regardless of the relief sought,

alleging violations of state law against the State of New York, its agencies and agents, unless the

state has consented to being sued in a federal forum," or Congress has abrogated the states'

sovereign immunity.   Canales-Jacobs v. New York State Office of Court Admin., 640 F. Supp.

2d 482, 499 (S.D.N.Y. 2009) (applying Eleventh Amendment to bar New York State Human

Rights Law and New York City Human Rights Law claims).   Plaintiff's federal and state law

---

[4]   Section 1981 states that "all persons within the jurisdiction of the United States shall have the
same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C.
§ 1981(a).   "This section thus outlaws discrimination with respect to the enjoyment of benefits,
privileges, terms, and conditions of a contractual relationship, such as employment [] and is
applicable to a plaintiff complaining of discrimination during an employment period of
probation." Patterson v. County of Oneida, 375 F.3d 206, 224-25 (2d Cir. 2004) (citing Whidbee
v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 68-69 (2d Cir. 2000); Grillo v. New York City
Transit Authority, 291 F.3d 231, 233-35 (2d Cir. 2002) (per curiam)).   The prohibition against
racial discrimination encompasses discrimination based on ancestry or ethnic characteristics.
See Saint Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987); Magana v. Northern
Mariana Islands, 107 F.3d 1436, 1446-47 (9th Cir. 1997); Anderson v. Conboy, 156 F.3d 167,
171 (2d Cir. 1998).

claims against Defendant OCA – other than the Title VII claims discussed below – and against Defendant Beirne in her official capacity, must therefore be dismissed.[5]

   The Eleventh Amendment protects state officials sued in their official capacity from suit.  "[T]he phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury."  Hafer v. Melo, 502 U.S. 21, 26 (1991).  Defendant New York State Unified Court System is "unquestionably an 'arm of the State'" and Defendant Beirne is unquestionably an employee of that state agency.  Gollomp v. Spitzer, 568 F.3d 355, 368 (2d Cir. 2009) (quoting Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006)); Canales-Jacobs, 640 F. Supp. at 488 ("The Unified Court System of the State of New York is the Judicial Branch of New York State Government. . . . The Office of Court Administration is the administrative office for the Unified Court System.") (citing N.Y. JUDICIARY LAW § 212(1)(b)). Accordingly, Plaintiff's Section 1983 and 1981 claims against Defendant Beirne in her official capacity must also be dismissed.[6]

   Plaintiff's discussion of the personal involvement requirement for individual liability under Section 1983 applies only to municipal officials in their official capacity and state

_____

[5]  As noted above, Plaintiff has withdrawn his Section 1983 claims against OCA.  (Pltf. Br. 9)
[6]  Plaintiff's Section 1981 claims against Beirne must also be dismissed because a claim against a state actor for violating rights guaranteed by Section 1981 must be brought under Section 1983. See Jett v. Dallas Ind. Sch. Dist., 491 U.S. 701, 733 (1989) (immunity against § 1983 suits also provides immunity against § 1981 suits, because "§ 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units"); Martinez v. City Univ. of N.Y., No. 07 Civ. 6453 (GBD), 2010 WL 987029, at *2 (S.D.N.Y. Mar. 12, 2010).  Despite a circuit split resulting from the enactment of Section 1981(c) – which extends the reach of Section 1981's protections to non-governmental actors – the Second Circuit has continued to follow Jett.  Patterson, 375 F.3d at 225; Anderson v. Conboy, 156 F.3d at 176 n.17 (following Jett despite circuit split over whether Jett survives enactment of section 1981(c)).

officials in their individual capacity.  (See Pltf. Br. 6-7)   The cases cited by Plaintiff involve claims brought against defendants who were state employees employed in supervisory roles but who were sued in an individual capacity, thus requiring personal involvement in the alleged constitutional violation.  These cases have no bearing on whether state officials such as Beirne may be sued in their official capacity.  They plainly cannot be sued in their official capacity.  "Therefore, to the extent that [plaintiff] asserts claims under §§ 1981 and 1983 against New York State, [its agencies], and the individual defendants in their official capacities, those claims [must be] dismissed."  Askew v. New York, No. 09 Civ. 553 (GLS)(RFT), 2010 WL 276194, at *7 (N.D.N.Y Jan. 15, 2010) ("Liability under [Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978)] pursuant to § 1983 attaches solely to municipalities, and not to the State or its individual officers.") (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Jett, 491 U.S. at 733-36; Bogle-Assegai v. Connecticut, 470 F.3d 498, 509 (2d Cir. 2006) (affirming dismissal of §§ 1981 and 1983 claims against state agency as barred by Eleventh Amendment)).

        The Eleventh Amendment does not bar suits to impose "individual and personal liability" on state officials under § 1983, however.  See Hafer v. Melo, 502 U.S. at 30.  "[S]tate officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts."  Id.  Thus,

Plaintiff's discrimination claims under Section 1983 against Defendant Beirne in her individual capacity are not subject to automatic dismissal.[7]

## II.    CLAIMS BARRED BY THE FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Defendants argue that those claims not raised in Plaintiff's SDHR complaint – such as the claims that Beirne made racially derogatory comments, prevented Plaintiff from using the microfiche room for lunch, and accused him of incorrectly entering data into the library collection, as well as Plaintiff's failure to promote claim – are barred by the administrative exhaustion requirements of Title VII.  (Def. Br. 6-8; Def. Reply Br. 5)

Plaintiff argues that because any allegations and claims related to his Title VII claims against OCA are "reasonably related" to allegations made in his SDHR complaint, he may pursue these claims in federal court even if they were not explicitly included in the administrative complaint.  (Pltf. Br. 2-4)

Because the scope of Plaintiff's SDHR complaint cannot reasonably be read to include claims for failure to promote,[8] he has failed to exhaust his administrative remedies as to that claim.  Accordingly, to the extent described below, his Title VII claims based on failure to promote are barred.[9]  Because the SDHR complaint sets forth facts that could be read as

---

[7]  For purposes of an individual capacity claim against a state actor, "[t]he § 1981 claim is treated exactly like the § 1983 claim, becomes merged into it and is considered as a single claim." Booker v. Board of Educ., Baldwinsville Central School District, 238 F. Supp. 2d 469 (N.D.N.Y. Dec 18, 2002) (citing Pearson v. Macon-Bibb County Hospital Authority, 952 F.2d 1274, 1278 n.3 (11th Cir. 1992)).

[8]  This includes Plaintiff's claims for failure to promote to the positions of Principal Law Librarian – the position Beirne was ultimately hired for – and Senior Law Librarian.

[9]  To the extent these allegations were also part of Plaintiff's Section 1981, Section 1983, and NYSHRL claims against OCA, the Court ruled above that those claims must be dismissed on Eleventh Amendment grounds.

providing a basis for a hostile work environment and retaliation claim, as well as the additional allegations of specific harassment and retaliation, Plaintiff is deemed to have exhausted his administrative remedies on those claims.

### A.        Applicable Law

Filing a charge with the EEOC or a state administrative agency is a prerequisite to bringing a Title VII suit in federal court.  See 42 U.S.C. §§ 2000e-5(e) and (f); see, e.g., Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994).  Plaintiff may assert in a civil action only claims either presented to an administrative agency or reasonably related to such claims. Ximines v. George Wingate High School, 516 F.3d 156, 158 (2d Cir. 2008).

The Second Circuit recognizes three circumstances in which claims in a federal complaint reasonably relate to allegations raised in an administrative complaint:

> when the conduct alleged in the complaint would 1) fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; 2) constitute retaliation for filing a timely EEOC charge; or 3) constitute further incidents of discrimination perpetrated in the same manner as alleged in the EEOC charge.

Okon v. Appia, No. 06 Civ. 6810 (CPS)(KAM), 2008 WL 2245431, at *8 (E.D.N.Y. May 29, 2008) (citing Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 83 (2d Cir. 2001); Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1402-03 (2d Cir. 1993) (superseded by statute on other grounds, 42 U.S.C. § 1981(b), as recognized in Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir. 1998))). Plaintiff argues only the first exception.  (Pltf. Br. 2-4)

"[The first] exception to the exhaustion requirement 'is essentially an allowance of loose pleading' and is based on the recognition that 'EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC

to the discrimination that a plaintiff claims [he] is suffering.'"  Deravin v. Kerik, 335 F.3d 195,

201 (2d Cir. 2003) (quoting Butts, 990 F.2d at 1402).

                Courts will not consider allegations presented for the first time in a federal

complaint, however, if the new allegations go to "the core of plaintiff's claim."  Okon, 2008 WL

2245431, at *9 (citing Samimy v. Cornell Univ., 961 F. Supp. 489, 492 (W.D.N.Y. 1997)

(dismissing claims on summary judgment where complaint was "far more expansive than . . .

single [allegation in] EEOC" charge)).  "Judicial claims which serve to amplify, clarify or more

clearly focus earlier EEO[C] complaints are appropriate.  Allegations of new acts of

discrimination, offered as the essential basis for the requested judicial review, are not

appropriate."  McGuire v. United States Postal Service, 749 F. Supp. 1275, 1287 (S.D.N.Y.

1990) (quoting Ray v. Freeman, 626 F.2d 439, 443 (5th Cir. 1980), cert. denied, 450 U.S. 997

(1981) (citation omitted)); see also Okon, 2008 WL 2245431, at *9 (citing Hansen v. Danish

Tourist Bd., 147 F. Supp. 2d 142, 153 (S.D.N.Y. 2001) (dismissing quid pro quo sexual

harassment claim where plaintiff did not allege in EEOC complaint sexual advance by

supervisor); Choi v. Chemical Bank, 939 F. Supp. 304, 312 (S.D.N.Y. 1996) (court did not have

subject matter jurisdiction over claims that bank failed to give plaintiff sufficient opportunities to

advance throughout the course of his employment where plaintiff alleged only a single instance

of failure to promote in EEOC charge); Campbell v. Grayline Air Shuttle, Inc., 930 F. Supp. 794,

800 (E.D.N.Y. 1996) (plaintiff's alleged "functional demotion" in her EEOC charge was not a

basis for later claims of decreased work hours and denial of office space)).  Although loose

pleading is permitted, vague statements of injury cannot serve as a basis for later articulated

claims of discrimination.

In <u>Butts</u>, 990 F.2d at 1401-03, the Second Circuit affirmed the dismissal of the plaintiff's disparate treatment claims where the plaintiff's administrative complaint had alleged that she had "consistently been the target of discriminatory practices and treatment" and that she was "denied promotional opportunities and consideration based on [her] race and sex."  The Court explained:  "Were we to permit such vague, general allegations, quite incapable of inviting a meaningful EEOC response, to define the scope of the EEOC investigation and thereby predicate subsequent claims in the federal lawsuit, such allegations would become routine boilerplate and Title VII's investigatory and mediation goals would be defeated."  <u>Id.</u>

A plaintiff is not required to use specific legal terms in an administrative complaint, however.  "[I]t is the substance of the charge and not its label that controls."  <u>Jenkins v. New York City Transit Auth.</u>, 646 F. Supp. 2d 464, 470-71 (S.D.N.Y. 2009) (Retaliation sufficiently alleged in charge because "[w]hile the plaintiff did not check the box for 'retaliation' on her EEOC charge form, her attached affidavit clearly alleges that she asked the Transit Authority to accommodate her religious beliefs . . . that her request was denied, and that she was thereafter terminated…."))  Accordingly, courts look to the scope of the factual allegations alleged before administrative agencies in determining exhaustion.  <u>See Williams v. New York City Hous. Auth.</u>, 458 F.3d 67, 71 (2d Cir. 2006) (holding sex discrimination claim was reasonably related to retaliation claim made in EEOC charge even where sex discrimination was not indicated on the EEOC charge, but where charge included factual allegations consistent with sex discrimination).

**B.    <u>Analysis</u>**

Plaintiff's SDHR complaint alleges that OCA discriminated against him "in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law)

17

because of race/color, [and] national origin," and Title VII of the Civil Rights Act of 1964.

(Brewington Decl., Ex. A at 1-2)  The SDHR complaint alleges that Beirne:

> (1) "made inaccurate and derogatory remarks about my performance and professionalism which culminated in a biased and inaccurate performance review of February 23, 2006"; (2) "made remarks about my alleged going to lunch early, my alleged illegible handwriting, my alleged rudeness to Ms. Gail Anderson, of Black American-Indian origin, a co-worker, and my alleged abuse of sick time"; (3) "mistreated Gail Anderson by giving her a negative performance evaluation"; (4) "locked Ms. Anderson and I out of office where we hang up our coats and access ready-reference material for the public"; (5) "disconnected phone extensions for myself and Ms. Anderson while keeping an extension for her friend"; and (6) after Plaintiff protested his performance evaluation, "falsely accused [Plaintiff] in writing of sexually abusing her during the performance evaluation conference and attached it to [his] performance evaluation."

(Id.)  Based on these events, Plaintiff "charge[d] [OCA] with an unlawful discriminatory practice relating to employment because of race/color [and] national origin," in violation of the New York State Human Rights Law and Title VII.  (Id.)

   While these statements do not refer to a hostile work environment, disparate treatment, or retaliatory intent specifically, they are material to such claims and such claims could certainly "fall within the scope" of an SDHR or EEOC investigation of the administrative complaint.  "[N]umerous courts in this Circuit have found retaliation claims arising out of retaliatory conduct occurring prior to the employee's filing of an EEOC charge to be reasonably related to claims of discrimination formally included in the charge where the charge includes enough factual allegations to alert the EEOC to the possibility that the employee was subjected to retaliation."  Jenkins, 646 F. Supp. 2d at 472 (citing Ridgway v. Metro. Museum of Art, No. 06 Civ. 5055 (SAS), 2007 WL 1098737, at *5 (S.D.N.Y. Apr. 10, 2007) (holding that retaliation claim was reasonably related to disability discrimination claim stated in EEOC charge where charge alleged that plaintiff had requested reasonable accommodation, that his requests had been

18

denied, and that he was subsequently terminated); <u>Rieger v. Orlor, Inc.</u>, 427 F. Supp. 2d 105, 115

(D. Conn. 2006) (holding that retaliation claim was reasonably related to claims in EEOC charge

where charge alleged that plaintiff requested an accommodation and was thereafter transferred

and then terminated)).

   Similarly, the various discrete acts of retaliation and harassment that Plaintiff now

alleges Beirne committed – such as Beirne's use of the word "Boy," her mimicking Plaintiff's

accent, her barring him from eating lunch in the microfiche room, and her criticisms of Plaintiff

– "fall within the scope of the EEOC investigation which can reasonably be expected to grow out

of the charge of discrimination," <u>Okon</u>, 2008 WL 2245431, at *8, because they all relate to

Plaintiff's interactions with Beirne and Beirne's alleged discriminatory and retaliatory acts

against Plaintiff.[10]  The acts therefore "serve to amplify . . . earlier [SDHR] complaints," rather

than being "new acts of discrimination, offered as the essential basis for the requested judicial

review."[11]  <u>McGuire</u>, 749 F. Supp. at 1287; <u>cf.</u> <u>Murray v. Bd. of Educ. of N.Y.</u>, 984 F. Supp.

169, 177 (S.D.N.Y. 1997) (finding proper exhaustion of failure to promote claim even though

EEOC charge focused on discrimination in plaintiff's transfer to a different position, because

"[a]t their roots, her involuntary transfer and failure to promote claims both stem from what she

perceived as a discriminatory vendetta against her by certain of her superiors employed by the

Board.  Plaintiff alludes to the alleged vendetta in the Charge when she acknowledges but denies

_____

[10] Although the dates of many of the alleged incidents are not clear, as discussed above, it is
irrelevant whether the events occurred before or after the SDHR charge if they are reasonably
related to the allegations in the charge.  <u>See</u> <u>Jenkins</u>, 646 F. Supp. 2d at 472; <u>Samimy</u>, 961 F.
Supp. at 492.
[11] For example, courts have refused to consider claims of racial discrimination when only gender
discrimination was alleged in the EEOC or SDHR complaint.  <u>Castagna v. Luceno</u>, No. 09–CV–
9332 (CS), 2011 WL 1584593, at *9 (S.D.N.Y. Apr. 26, 2011) (collecting cases).

accusations of poor performance and insubordination, complaining of disparate treatment."). Plaintiff's SDHR complaint cites a variety of specific incidents occurring over a period of time, rather than a single, discrete event or action.  Cf. Samimy, 961 F. Supp. at 492 ("The first problem with Samimy's federal complaint is that it is far more expansive than his single EEOC complaint" that covered only one annual performance review).

   The failure to promote claims pleaded in the Amended Complaint, however, are not raised in the SDHR complaint in any fashion, and would not fall within the scope of an administrative investigation.  The charge does not mention that Plaintiff applied for other positions, interviewed for other positions, desired promotion, or was denied promotion, although at least some of the failures to promote occurred before Plaintiff filed the SDHR complaint.  An investigation based on the allegations in the SDHR complaint would have centered around Beirne's interactions with Plaintiff.  Plaintiff offers no reason why such an investigation would expand to include OCA's selection of Beirne as Principal Law Librarian, or an inquiry into why Plaintiff was not contacted after he responded to a canvassing letter concerning a Senior Law Librarian position.  Cf. Colquitt v. Xerox Corp., No. 05-CV-6405, 2010 WL 3943734, at *5 (W.D.N.Y. Oct. 7, 2010) ("the plaintiff has not demonstrated that the failure to promote . . . , even if racially motivated, could reasonably grow out of the incidents of which she complained in the EEOC Charge, which consisted of a series of racial epithets by co-workers and the corresponding lack of response by management").  Therefore, the failure to promote claim does not "fall within the scope" of any investigation based on the SDHR complaint.

   In sum, Plaintiff properly exhausted his hostile work environment, disparate treatment, and retaliatory intent claims, as well as the specific examples of such claims.  He did not exhaust his failure to promote claim, and accordingly that claim must be dismissed.

**III.**     **CLAIMS BARRED BY THE STATUTE OF LIMITATIONS**

    Plaintiff filed his SDHR complaint on May 10, 2006.  (Pltf. R. 56.1. Counter-Stat.

¶ 171; Brewington Decl., Ex. A)  Defendants argue that claims accruing prior to July 14, 2005,

are barred by the 300-day statute of limitations for filing an administrative charge of

discrimination in New York.  (Def. Br. 11-12)  Plaintiff contends that the discrimination he

suffered was in the form of a "continuing violation" and that he is entitled to bring claims based

on all conduct that is part of the continuing violation, as long as the last act included in the

violation occurred within the statute of limitations period.  (Pltf. Br. 9-10)  Because Plaintiff has

not demonstrated that he suffered from a continuing violation, his Title VII claims relating to

acts occurring prior to July 14, 2005 are barred.

  **A.**  **Applicable Law**

    A charge of discrimination under Title VII must be filed with the agency charged

with investigating such matters within 300 days of the alleged unlawful employment practice.[12]

42 U.S.C. § 2000e-5(e)(1).  "It does not matter, for purposes of the statute, that some of the

component acts fall outside the statutory time period.  Provided that an act contributing to the

claim occurs within the filing period, the entire time period of the [claim] may be considered by

a court for the purposes of determining liability."  Nat'l R.R. Passenger Corp. v. Morgan, 536

U.S. 101, 117 (2002); see also Nicoletti v. N.Y. City Dep't of Educ. Office of Legal Servs., No.

08 Civ. 11305(WHP), 2009 WL 4756508, at *2 (S.D.N.Y. Decl. 7, 2009).  "The filing deadlines

for a charge of discrimination act as a 'statute of limitations' and a failure to timely file a charge

---

[12]  Claims pursuant to Sections 1981 and 1983 have a three year statute of limitations; such
claims need not be asserted before the EEOC or SDHR.  See, e.g., Patterson, 375 F.3d at 225
(citing cases).

acts as a bar to a plaintiff's action." Kubicek v. Westchester Cnty, 2009 WL 3720155, at *4

(quoting Hill v. Citibank Corp., 312 F. Supp. 2d 464, 473 (S.D.N.Y. 2004)).

**B.**   **Analysis**

Plaintiff argues that the "incidents that occurred in May and June of 2005 [ –

outside the 300 day period –] established the foundation of the discriminatory and hostile work

environment that Mr. Concey faced while employed by the OCA [and that] [t]he incidents

contributed to the hostile work environment that Mr. Concey complained of in both his SDHR

and federal complaints."  (Pltf. Br. 10)  Plaintiff cannot save his time-barred claims by reciting a

litany of discrete acts and alleging that he was subject to a continuing violation, however.

In Morgan, 536 U.S. at 105, the Supreme Court held that the continuing violation

doctrine does not apply to "discrete acts of discrimination or retaliation that occur outside the

statutory time period," and that discrete acts will not converge into "a single unlawful practice

for the purpose[] of timely filing."[13] Id. at 111. The law is well settled that "multiple incidents of

discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism

do not amount to a continuing violation." Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir.

1993), cert. denied, 511 U.S. 1052 (1994) (citations omitted) (abrogated on other grounds by

Kasten v. Saint-Gobain Performance Plastics Corp., 131 S.Ct. 1325 (2011)); see also Butts, 990

F.2d at 1404 (stating that "the continuous violation exception applies only where discrimination

---

[13]  The Supreme Court has explained, however, that in the specific context of hostile work
environment claims, "consideration of the entire scope of a hostile work environment claim,
including behavior alleged outside the statutory period, is permissible for the purpose[] of
assessing liability, so long as an act contributing to that hostile work environment takes place
within the statutory time period." Morgan, 536 U.S. at 105.  Accordingly, acts that occurred
prior to July 14, 2005, can be considered in relation to Plaintiff's hostile work environment
claim, assuming an act contributing to that claim took place within the limitations period.

is accomplished through a specific official policy or mechanism," such as a discriminatory seniority list or discriminatory fire department tests (citations omitted)).  "[Invoking] the term 'practice' [does not] convert[] related discrete acts into a single unlawful practice for the purposes of timely filing."  Morgan, 536 U.S. at 111; Gross v. NBC, 232 F. Supp. 2d 58, 68 (S.D.N.Y. 2002) ("The holding in Morgan is in accord with Second Circuit law which states that alleged failures to compensate adequately, transfers, job assignments and promotions cannot form the basis for a continuing violation claim.")).  The continuing violation doctrine "'is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances.'"  Flores v. N.Y. City Human Res. Admin., No. 10 Civ. 02407(RJH), 2011 WL 3611340, at *3 (S.D.N.Y. Aug. 16, 2011) (quoting Apionishev v. Columbia Univ., No. 09 Civ. 6471(SAS), 2011 WL 1197637, at *3 (S.D.N.Y. Mar. 25, 2011)).

    Here, "the separate and discrete acts of discrimination and retaliation alleged to have occurred prior to [July 14, 2005] . . . fall outside the scope of the continuing violations doctrine as set forth in Morgan."  Early v. Wyeth Pharms., Inc., 603 F. Supp. 2d 556, 562-72 (S.D.N.Y. 2009) (citing Henry v. Wyeth Pharms., Inc., No. 05 Civ. 8106 (CM), 2007 WL 2230096, at *28 (S.D.N.Y. July 30, 2007) ("[I]n the wake of Morgan, the continuing violation doctrine no longer applies to discrete discriminatory acts.")).  Plaintiff's complaints of discriminatory treatment prior to July 14, 2005, such as Beirne's remarks and OCA's failure to promote him to the position of Principal Law Librarian (a claim that in any event is barred by a failure to exhaust administrative remedies) – do not demonstrate an ongoing and systematic scheme of discrimination on the part of OCA.  See Morgan, 536 U.S. at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a

23

separate actionable 'unlawful employment practice.' [A plaintiff] can only file a charge to cover discrete acts that 'occurred' within the appropriate time period."); Crosland v. City of N.Y., 140 F. Supp. 2d 300, 308 (S.D.N.Y. 2001) ("It is well-established that transfers, demotions, failure to compensate adequately, and failure to promote are all discrete acts which do not constitute a continuing violation.") (citing Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997); Aggarwal v. New York City Health and Hosp. Corp., No. 98 Civ. 5063 (DLC), 2000 WL 172787, at *4 (S.D.N.Y. Feb. 10, 2000) ("Courts have consistently held that discrete or completed acts, including repeated failures to promote an employee, do not constitute a continuing violation."); Pauling v. Secretary of Dep't of Interior, 960 F. Supp. 793, 801-02 (S.D.N.Y. 1997) ("Demotion, failure to promote, and termination have all been deemed discrete acts.")).  Because Plaintiff has not shown that Beirne's various alleged acts of discrimination and retaliation were part of a specific discriminatory policy or practice, any such acts occurring before July 14, 2005, are time-barred and are not actionable.

## IV.  EMPLOYMENT DISCRIMINATION

Defendant OCA does not enjoy Eleventh Amendment immunity for claims of race discrimination under Title VII.  See Canales-Jacobs, 640 F. Supp. 2d at 501 (S.D.N.Y. 2009).  Standards for Title VII claims are evaluated under the same standard as NYSHRL claims,[14] and as discrimination claims under Sections 1981 and 1983.[15]

-------------------

[14] See Torres v. Pisano, 116 F.3d 625, 629 n.1 (2d Cir. 1977) ("We have repeatedly noted that claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII."), cert. denied, 522 U.S. 997 (1997); Tomka v. Seiler Corp., 66 F.3d 1295, 1305 n.4 (2d Cir. 1995) (noting that New York courts apply the same standards of proof to state and local claims of employment discrimination as to those brought under Title VII); Williams v. City of New York, No. 99 Civ. 2697 (ARR)(LB), 2006 WL 2668211, at *24

Under the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v.</u> <u>Green</u>, 411 U.S. 792 (1973), a plaintiff asserting race discrimination bears the initial burden to establish a <u>prima</u> <u>facie</u> case of discrimination.  The burden then shifts to the employer to articulate "a legitimate, non-discriminatory reason" for the employment action.  <u>Reeves</u>, 530 U.S. at 142.  "[O]nce the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision," the presumption raised by the <u>prima</u> <u>facie</u> case is rebutted and drops from the case.  <u>Id.</u> at 143. The plaintiff "must [then] be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  <u>Id.</u> (internal quotations omitted).  "[T]he test for summary judgment is [ultimately] whether the evidence can reasonably support a verdict in plaintiff's favor."  <u>James v. N.Y. Racing Ass'n</u>, 233 F.3d 149, 157 (2d Cir. 2000).

---

(E.D.N.Y. Sept. 11, 2006); <u>Salvatore v. KLM Royal Dutch Airlines</u>, No. 98 Civ. 2450(LAP), 1999 WL 796172, at *9 n.4 (S.D.N.Y. Sept. 30, 1999) (same).

The NYSHRL § 296 states, in relevant part:

1.  It shall be an unlawful discriminatory practice:
    (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

[15]  <u>See</u> <u>Johnson v. CH Energy Group, Inc.</u>, No. 09-0459-cv, 2009 WL 3823096, at *2 (2d Cir. Nov. 17, 2009) ("In both the Title VII context and with respect to section 1981 claims, this Court applies the burden-shifting framework articulated in <u>McDonnell Douglas Corp. v. Green</u>"); <u>Baroor v. N.Y. City Dep't of Educ.</u>, No. 09-1924-cv, 2010 WL 227681, at *3 (2d Cir. Jan. 21, 2010) ("Claims of employment discrimination brought pursuant to 42 U.S.C. § 1983 are analyzed using the burden-shifting framework set forth in <u>McDonnell Douglas v. Green</u>"); <u>Sorlucco v. New York City Police Dep't</u>, 888 F.2d 4, 7 (2d Cir. 1989); <u>see also</u> <u>Philippeaux v. North Central Bronx Hosp.</u>, 871 F. Supp. 640, 654 (1994).

As an initial matter, employment discrimination claims under Title VII require a showing that the conduct complained of occurred <u>because of</u> a plaintiff's membership in a protected class.  A plaintiff is a member of a protected class if he is discriminated against because of his "race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2.  Abusive conduct in the workplace for reasons other than a plaintiff's membership in a protected class is not actionable.

Here, Plaintiff argues that OCA discriminated against him based on his race, color, and national origin through the acts of various individuals, but primarily Beirne.  Plaintiff claims that he was treated differently because of his race, suffered from a hostile work environment, and was retaliated against for complaining about his employment conditions.  Although Plaintiff has offered evidence of isolated comments that could be regarded as referring to his race or national origin, he has failed to show that he suffered any adverse actions due to racial discrimination, or that he experienced sufficiently severe or pervasive harassment to constitute a hostile work environment.

### A.        Race and National Origin Discrimination Claims:  Prima Facie Case

In order to establish a <u>prima facie</u> case of employment discrimination, a plaintiff must "introduce[] evidence that raises a reasonable inference that action taken by [his] employer was based on an impermissible factor."  <u>Stofsky v. Pawling Cent. Sch. Dist.</u>, 635 F. Supp. 2d 272, 297 (S.D.N.Y. 2009).  A <u>prima facie</u> case requires that the plaintiff show:  (1) he was a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  <u>Roge v. NYP Holdings, Inc.</u>, 257 F.3d 164, 168 (2d Cir. 2001).

26

Plaintiff has alleged a series of discriminatory actions, such as being told he could not use the microfiche room for lunch, losing access to a telephone extension, and being told not to walk through Beirne's office to get to another area of the library.  (Pltf. R. 56.1 Counter-Stmt. ¶¶ 128-32, 183, 169)

A plaintiff may establish discriminatory intent through direct or circumstantial evidence.  Where such evidence does not exist, a plaintiff may allege, as Plaintiff does here, a claim of disparate treatment.  "A showing of disparate treatment – that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group' – is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case."  Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (quoting Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)).  "A plaintiff relying on disparate treatment evidence 'must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'"  Id. (quoting Graham, 230 F.3d at 39).

With respect to Plaintiff's disparate treatment claim, Plaintiff has not shown that similarly situated employees were treated differently from him.  "[W]here a plaintiff seeks to make out her prima facie case by pointing to the disparate treatment of a purportedly similarly situated employee, the plaintiff must show that she shared sufficient employment characteristics with that comparator so that they could be considered similarly situated."  McGuinness v. Lincoln Hall, 263 F.3d 49, 53-54 (2d Cir. 2001) (internal citation omitted).  To be considered similarly situated, "a plaintiff must show that her co-employees were subject to the same performance evaluation and discipline standards."  Graham, 230 F.3d at 40.  It is undisputed that Defendant Beirne supervises only Plaintiff and Gail Anderson (Pltf. Dep. at 72), and that the two white individuals cited by Plaintiff as receiving more favorable treatment from Beirne – Mr.

27

Franklin and Court Officer Flemming – were not part of the library's staff and were not supervised by Beirne.  (Am. Cmplt. ¶ 73; Pltf. Dep. at 65-66)  Accordingly, Plaintiff has not shown that he is similarly situated to these employees.

The slights cited by Plaintiff likewise do not rise to the level of an adverse employment action.  "Everyday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions."  Walder v. White Plains Bd. of Educ., 738 F. Supp. 2d 483, 498 n.18 (S.D.N.Y. 2010) (internal citations omitted); Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).  "Instead, an actionable adverse employment action is 'a materially significant disadvantage' such as 'termination of employment, a demotion . . . , a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'"  Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 128 (2d Cir. 2004) (internal quotation marks omitted); Galabya, 202 F.3d at 640.  The inconveniences about which Plaintiff complains – losing access to a telephone extension, being denied access to the microfiche room for lunch, and having to use a hallway rather than his supervisor's office to access another area of the library – are not "material."

Accordingly, Plaintiff's race and national origin discrimination claims will be dismissed.

**B.    Hostile Work Environment**

To make out a prima facie claim of discrimination based on a hostile work environment, a plaintiff must demonstrate "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment, and (2) that a specific basis exists for imputing the conduct that created

the hostile environment to the [defendant]." Petrosino v. Bell Atlantic, 385 F.3d 210, 221 (2d Cir. 2004) (internal quotation marks omitted). The first element is both objective and subjective. Id. The alleged misconduct "must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003) (internal quotation marks omitted).

Whether the alleged conduct was sufficiently "severe or pervasive" to create an objectively hostile or abusive work environment is determined by considering factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Patterson, 375 F.3d at 227 (internal quotation marks omitted); see Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993) (listing factors a court may consider in weighing a hostile work environment claim).

"There is no fixed number of incidents that a plaintiff must endure in order to establish a hostile work environment. . . ." Alfano, 294 F.3d at 379. Rather, in assessing a hostile work environment claim, the court must consider "the record as a whole and the totality of [the] circumstances." Raniola v. Bratton, 243 F.3d 610, 617 (2d Cir. 2001) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 69 (1986)). Courts proceed "on a case by case basis considering all the individual facts at hand." Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 607 (2d Cir. 2006). While "isolated  incidents [of harassment] ordinarily will not rise to the level of a hostile work environment, even a single incident of sufficient severity may so alter the terms and conditions of employment as to create such an environment." Patterson, 375 F.3d at 227.

Here, Plaintiff has not offered enough evidence to create a material issue of fact as to whether his "workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment." Petrosino, 385 F.3d at 221. Plaintiff cites four incidents that could be viewed as referring to Plaintiff's race or national origin. In 2005, Beirne said to him: "Boy, you don't have to use the microfiche room," and "I hear you, boy." (Pltf. R. 56.1. Counter-Stmt. ¶¶ 131, 138) On another occasion in 2005, Beirne asked Gail Anderson, Plaintiff's colleague, "Where are the Boys?" (Id. ¶ 136) On one occasion over a four-year period Beirne mimicked Plaintiff's accent. (Id. ¶ 178)

"For racist comments, slurs, and jokes to constitute a hostile work environment, there [generally] must be more than a few isolated incidents of racial enmity. . . ." Schwapp, 118 F.3d at 110 (internal citation and quotation marks omitted). The Second Circuit has found a hostile work environment where there was evidence of a "stream of racially offensive comments," including a "veritable barrage of racial epithets." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 70 (2d Cir. 2000).

Accepting as true that Beirne – over a four year period – referred to Plaintiff as "boy" on three occasions and mocked his accent on one occasion, this conduct does not rise to the level of a hostile work environment. Cf. Rivera v. Rochester Genesee Regional Transp. Authority, 761 F. Supp. 2d 54, 57-58 (W.D.N.Y. 2011) (granting summary judgment despite plaintiff's claims that co-workers, inter alia, "called [him] 'nigger,' 'boy' and 'monkey,'" because "[t]aken together and granting all favorable inferences to plaintiffs, these allegations, which primarily concern isolated incidents of crude and offensive language taking place over a period of several years, . . . do not approach the level of an actionable hostile work environment."); Mutts v. Southern CT State Univ., No. 3:04-CV-1104 (CFD), 2007 WL

30

2688871, at *6 (D. Conn. Sept. 12, 2007) (granting summary judgment despite allegations that

plaintiff was, <u>inter alia</u>, "referred to . . . as 'boy' in a demeaning manner," because "[w]hile many

of these comments and incidents are reprehensible . . . , they are merely episodic and not

sufficiently severe or pervasive to alter the condition of [plaintiff's] employment"); <u>Holt v.</u>

<u>Roadway Package Sys., Inc.</u>, 506 F. Supp. 2d 194, 204 (W.D.N.Y. 2007) (granting summary

judgment despite allegations that the terms "boy," "porch monkey," and "nigger-rigged" were

"used on separate and isolated occasions by independent contractors and one of [plaintiff's]

fellow managers," because "while unquestionably crude and offensive, [the terms] comprise

stray remarks which do not rise to the level of a hostile work environment when considered in

the totality of [plaintiff's] five-year tenure with [his employer]"); <u>Clerge v. Consol. Edison</u>, Nos.

95 CIV. 9072(MBM), 97 CIV. 8554(MBM), 1999 WL 239688, at *3 (S.D.N.Y. Apr. 23, 1999)

(finding that generalized allegations that supervisors had referred to plaintiff as "boy" two or

three times were insufficient, without more, to support hostile work environment claim, because,

"to the extent that they could be construed as racially 'tinged,' these incidents were nowhere near

severe and pervasive enough to create an objectively hostile or abusive work environment"

(internal quotations and citations omitted)); <u>Stembridge v. City of New York</u>, 88 F. Supp. 2d

276, 286 (S.D.N.Y. 2000) (finding use of epithets such as "uppity nigger" and "boy" in isolated

incidents over the course of three years not sufficient to create a hostile work environment,

because "[o]verall, seven instances over three years does not create a work environment

permeated with racial hostility").

   "At most, all Plaintiff has established is that [Beirne was] not the most nurturing

[of] supervisors.  But the law does not require civility, it only requires that employers not

manifest discriminatory animus in their supervision of employees."  <u>Stofsky v. Pawling Cent.</u>

31

Sch. Dist., 635 F. Supp. 2d at 294 (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S.

75, 80 (1998) (noting that Title VII is not "a general civility code for the American workplace")).

Accordingly, Defendants are entitled to summary judgment on Plaintiff's hostile work

environment claim.

        **C.**      **Plaintiff's Retaliation Claim**

        **1.**      **Applicable Law**

      Courts evaluate Title VII retaliation claims using a three-step burden-shifting

analysis:

> First, the plaintiff must establish a prima facie case. That is, an employee
> must show "(1) participation in a protected activity; (2) that the defendant
> knew of the protected activity; (3) an adverse employment action; and (4)
> a causal connection between the protected activity and the adverse
> employment action." McMenemy v. City of Rochester, 241 F.3d 279,
> 282-83 (2d Cir. 2001). The burden of proof that must be met to permit a
> Title VII plaintiff to survive a summary judgment motion at the prima
> facie stage has been characterized as "'minimal' and 'de minimis.'"
> Woodman v. WWOR-TV, 411 F.3d 69, 76 (2d Cir. 2005) (quoting
> Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir.
> 2001)). In determining whether this initial burden is satisfied in a Title
> VII retaliation claim, the court's role in evaluating a summary judgment
> request is to determine only whether proffered admissible evidence would
> be sufficient to permit a rational finder of fact to infer a retaliatory motive.
> See Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d
> Cir. 1987).
>
> If a plaintiff sustains the initial burden, a presumption of retaliation arises.
> In turn, under the second step of the burden-shifting analysis, the onus
> falls on the employer to articulate a legitimate, non-retaliatory reason for
> the adverse employment action. See [Quinn v. Green Tree Credit Corp.,
> 159 F.3d 759, 768 (2d Cir. 1998)]. Finally, as for the third step, once an
> employer offers such proof, the presumption of retaliation dissipates and
> the employee must show that retaliation was a substantial reason for the
> adverse employment action.

Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005).[16]

        A plaintiff may show retaliatory intent with direct evidence "of retaliatory animus directed against the plaintiff" or with circumstantial evidence, including evidence that "the protected activity was followed closely by discriminatory treatment" or evidence of "disparate treatment of fellow employees who engaged in similar conduct." Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir. 2001) (internal quotation omitted); see also McNair v. New York City Health & Hosp. Co., 160 F. Supp. 2d 601, 604 (S.D.N.Y. 2001).

        "An employee engages in a protected activity when []he has (1) 'opposed any practice made an unlawful employment practice' by Title VII, or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." Blake-McIntosh v. Cadbury Beverages, Inc., No. 96 Civ. 2554 (EBB), 1999 WL 643661, at *13 (D. Conn. Aug. 10, 1999) (quoting 42 U.S.C. § 2000e-3(a)). "The anti-retaliation provision of Title VII is not limited to discriminatory actions that alter or 'affect the terms and conditions of employment.'" Tepperwien, 606 F. Supp. 2d at 444 (citing Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006)). "[A]ctionable retaliation" is behavior that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, 548 U.S. at 68 (internal quotation marks omitted). A plaintiff need not show that the practices he or she opposed actually violated Title VII, but only that the plaintiff possessed a good faith reasonable belief that the underlying employment practice opposed was unlawful. See Quinn, 159 F.3d at 769; Galdieri-Ambrosini v. National

-----

[16] The same standards apply to Plaintiff's retaliation claims under state law. Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 609 (2d Cir. 2006) ("[R]etaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII.").

Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).  To find that a plaintiff engaged in protected activity and that the employer knew about that activity, a court must find that "the employer . . . understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII."  Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).

Defendants argue that Plaintiff cannot establish a prima facie case of retaliation because he did not engage in protected activity and, even if he had, there is no evidence that Beirne was aware of that activity or that she took adverse action against him because of that activity.  (Def. Br. 16)

2.    **Analysis**

Plaintiff engaged in protected activity when he complained about the absence of blacks in the position of Senior Law Librarian or Principal Law Librarian at OCA during a staff meeting.[17]  Turner v. Nat'l R.R. Passenger Corp., 181 F. Supp. 2d 122, 134 (N.D.N.Y. 2002) ("There can be no doubt that Plaintiff's complaints to management regarding the racial make-up of the Zone 3 workforce is a protected activity.").  Plaintiff's statement – "[h]ow many black[s] do you see in the systems having . . . you[r] position or senior law librarian?" (Pltf. R. 56.1. Counter-Stmt. ¶ 146) – could reasonably be interpreted as an expression of opposition to an unlawful employment practice:  discrimination against African-Americans in hiring and in promotion into senior jobs in OCA's law libraries.  See Quinn, 159 F.3d at 769.  Because Beirne was allegedly at the meeting at which Plaintiff made this statement and would therefore have

_____

[17]  Plaintiff did not engage in protected activity when he complained about race-neutral matters, such as understaffing at the library (Pltf. Rule 56.1 Counter-Stmt. ¶ 181), denial of access to a phone line (id. ¶ 183), or lack of a promotion.  (Id. ¶ 187)

knowledge of it (Pltf. R. 56.1 Counter-Stmt. ¶¶ 144, 146), the inquiry turns to whether Plaintiff

suffered an adverse employment action that can be causally connected to his statement.

   In the context of a retaliation claim, an adverse employment action is one that

"well might have dissuaded a reasonable worker from making or supporting a charge of

discrimination." Burlington Northern, 548 U.S. at 68 (internal citations omitted).  "[P]etty

slights, minor annoyances, and simple lack of good manners" will not normally constitute

adverse employment actions for purposes of a retaliation claim. Id.  A plaintiff must show

"material adversity," because "it is important to separate significant from trivial harms." Id.

(emphasis in original).

   Here, Plaintiff alleges that "less than one month" after he made the remarks at the

staff meeting, Beirne submitted a negative performance evaluation of him.  (Pltf. R. 56.1

Counter-Stmt. ¶ 147)  "Adverse employment actions may include negative evaluation letters,"

Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 226 (2d Cir. 2006) (internal citations omitted),

and a period of one month between the protected activity and the retaliation can be sufficient to

establish causation.  See Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002) (stating

that "a close temporal relationship between a plaintiff's participation in protected activity and an

employer's adverse actions can be sufficient to establish causation," and finding that period of

two months was sufficient).  Furthermore, after Plaintiff complained about the review

(Brewington Decl., Ex. T), Beirne added an addendum that accused Plaintiff of sexually

inappropriate behavior.  (Id., Ex. U)  These allegations meet the "minimal and de minimis"

burden of establishing a prima facie case of retaliation.  Jute, 420 F.3d at 173 (internal citations

omitted).

Because Plaintiff has sustained his initial burden, "a presumption of retaliation arises . . . [and] the onus falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action." Id. Defendants have failed to do so. Because Defendants have not offered such a reason, the presumption established by Plaintiff's prima facie showing of retaliation has not been rebutted, and summary judgment on these claims must be denied.

## V.   PLAINTIFF'S INDIVIDUAL CAPACITY CLAIMS

Plaintiff alleges that Defendant Beirne violated his Fourteenth Amendment rights pursuant to Section 1983 by "engag[ing] in actions and abuses which violate and deny Plaintiff his rights . . . of equal protection and due process in discriminating against Plaintiff because of and [on] account of his race, color, and national origin." (Am. Cmplt. ¶ 100)

To establish liability under Section 1983, Plaintiff must demonstrate (1) that the conduct in question deprived him of a right, privilege, or immunity secured by the laws of the United States, and (2) that the acts were attributable at least in part to defendants acting under color of state law. Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999). A defendant is said to act under color of state law when he exercises "some right or privilege created by the State . . . or by a person for whom [the State] is responsible," and is "a person who may fairly be said to be a state actor." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937. "Generally, a public employee acts under color of state law when he acts in his official capacity or exercises his responsibilities pursuant to state law." Kearney v. City of Bridgeport Police Dept., 573 F. Supp. 2d 562, 572 (D. Conn. 2008) (citing West v. Atkins, 487 U.S. 42, 50 (1988)). Here, Defendant Beirne's alleged actions were committed in the course of her duties as Plaintiff's supervisor at OCA. Accordingly, she is a state actor for purposes of Section 1983 liability.

Plaintiff's individual liability claims against Defendant Beirne under Sections 1981 and 1983 and the NYSHRL, and Plaintiff's claims under Title VII against OCA are substantially identical and are evaluated under the same standards:[18]

> Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause, and the factors justifying summary judgment dismissing Patterson's Title VII claim against the municipal defendants for termination of his employment equally support the summary dismissal of his claims for termination brought under 42 U.S.C. §§ 1981 and 1983.  Likewise . . . most of the standards applicable to the conduct alleged to constitute hostile work environment in violation of Title VII are also applicable to Patterson's employment claims under §1981 and his equal protection claims under § 1983.

Patterson, 375 F.3d at 224 (internal citations omitted); see also Philippeaux, 871 F. Supp. at 652 ("Although a Title VII claim cannot form the basis of a Section 1983 action, plaintiff may asset a claim under Section 1983 based on a violation of the Fourteenth Amendment that arises out of the same nucleus of facts.  In such a case, the Fourteenth Amendment violation is analyzed under

_____

[18] "[A] plaintiff may proceed against an individual defendant under the direct liability provision of [the] NYSHRL, § 296(1)(a), if the defendant . . . has the power to hire and fire the plaintiff." Messer v. Fahnestock & Co. Inc., No. 03 Civ. 4989 (ENV)(JMA), 2008 WL 4934608, at *9 (E.D.N.Y. Nov. 18, 2008).  To be held liable under this theory, the defendant must have "power to do more than carry out personnel decisions made by others."  Dawson v. County of Westchester, 351 F. Supp. 2d 176, 198 (S.D.N.Y. 2004) (internal quotation omitted); see also Patrowich v. Chem. Bank, 63 N.Y.2d 541, 542 (1984) (a defendant cannot be individually liable under the NYSHRL "if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others").  In addition to allowing NYSHRL Section 296.1 claims to proceed against individual defendants who allegedly "had the power to hire and fire" the plaintiff, Prince v. Madison Square Garden, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006), courts also permit such claims to proceed where the defendant allegedly "had the authority to set schedules and salaries, and to assign hours to the employees, without consultation."  Chamblee v. Harris & Harris, Inc., 154 F. Supp. 2d 670, 677 (S.D.N.Y. 2001).  As no allegations or evidence before this Court suggest that Defendant Beirne had the power to hire and fire staff librarians she supervised or that she had power over their salaries or hours without consultation, Plaintiff's Section 296 claim against Beirne in her individual capacity must be dismissed on this basis, regardless of Plaintiff's deficient prima facie claim of race discrimination.

the same <u>McDonnell-Burdine</u> test used in Title VII actions.") (citing <u>Sorlucco</u>, 888 F.2d at 6-7

(internal citations omitted)); <u>Stofsky</u>, 635 F. Supp. 2d at 305 (holding that "[d]efendants [were]

entitled to summary judgment on Plaintiff's Section 1983 claim for the same reasons, . . . that

summary judgment is appropriate with regard to Plaintiff's Title VII, . . . claims[, b]ecause

Plaintiff's equal protection claim is based on the same facts as her statutory discrimination

claims, and the standards for liability for plaintiff's claims brought under Section 1983 are the

same as those under the . . . federal antidiscrimination laws")  (internal quotations and citation

omitted).

    Because each of Plaintiff's race-related employment discrimination claims against

Beirne revolve around identical facts and allegations of employment discrimination, they fail for

the same reasons as Plaintiff's unsuccessful Title VII claims discussed above.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is

DENIED as to Plaintiff's retaliation claims and claim for intentional infliction of emotional

distress[19] but is otherwise GRANTED. The Clerk of the Court is directed to terminate the

motion (Dkt. No. 35).

Dated: New York, New York          SO ORDERED.
      September 30, 2011

Paul G. Gardephe
United States District Judge

---

[19] While Defendants' notice of motion indicates that they intended to move against all of
Plaintiff's claims, they did not address the emotional distress claim in their briefs.

39